RECEIVED
USDC CLERK, CHARLESTON, SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA MAY 22  P 12: 20

| | | |
|---|---|---|
| Esteban M. Weber, #279818, | ) | C. A. No. 2:04-1563-24AJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Gwendolyn Gathers; Percy | ) | |
| Jones; Michael Stephan; | ) | |
| Herman Wright; Timothy McCoy, | ) | |
| Head Nurse Mackey (FNU), | ) | |
| sued in their individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

This civil rights action pursuant to 42 U.S.C. § 1983[1],

brought by Esteban Weber, a state prisoner proceeding pro se and

in forma pauperis, is before the undersigned United States

Magistrate Judge for a report and recommendation on the

defendants' motions for summary judgement.  28 U.S.C. § 636(b).

On May 19, 2004, Weber filed the instant civil rights case,

which he amended on October 4, 2004.  Weber sued Gwendolyn

---

[1]  Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or the
District of Columbia, subjects, or causes to be subjected, any
citizen of Section 1983, titled a civil action for deprivation of
rights reads in relevant portion: the United States or other
person within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress, except
that in any action brought against a judicial officer for an act
or omission taken in such officer's judicial capacity, injunctive
relief shall not be granted unless a declaratory decree was
violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

Gathers, an officer at Broad River Correctional Institution (BRCI), a facility of the South Carolina Department of Corrections (SCDC), Percy Jones, an officer at BRCI, Michael Stephan, an officer at BRCI, Herman Wright, an officer at BRCI, FNU Mackey, head nurse at BRCI, and Timothy McCoy, a former officer at BRCI.  Weber alleged he was subjected to excessive force in violation of the Eighth Amendment to the Constitution, he was denied proper medical care in violation of the Eighth Amendment to the constitution, he was denied procedural due process when possessions of his were not returned to him in violation of the Fourteenth Amendment to the Constitution, and various violations of state laws.  He sued each defendant in both his or her individual and official capacities.  He seeks punitive and compensatory damages for his alleged injuries.

    The defendants filed their motions for summary judgment on August 19, 2005.  On August 24, 2005, and again on October 12, 2005, Weber was provided copies of the defendants' motions with affidavits and exhibits and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).  Weber filed an opposition to the defendants' motions,

2

with an affidavit and his own unsworn declarations on November
18, 2005.  Hence, it appears consideration of the motions is
appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record
demonstrates that the requirements of Rule 56 (c) have been met.
Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Summary judgment
is mandated where the party opposing the motion has failed to
establish the existence of an element essential to his case, and
on which he bears the burden of proof.  Id. at 322.
The party seeking summary judgment must inform the court of the
basis for its motion, and identify those portions of the record
that demonstrate the absence of a genuine issue of material fact.
The moving party, however, need not offer proof that negates the
opponent's claim; rather, as to issues on which the party
opposing the motion has the burden of proof at trial, the party
seeking summary judgment need only point to an absence of
evidence to support the opponent's claim.  The party opposing
summary judgment must then point to facts evidencing a genuine
issue for trial.  Fed. R. Civ. P. 56 (c); see also, Anderson v.
Liberty Lobby. Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the
plaintiff raises a "metaphysical doubt" as to the material facts.
Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp.,

3

475 U.S. 574, 586 (1986).  Likewise, "unsupported speculation is

not sufficient to defeat a summary judgment motion."  <u>Felty v.

Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987).

If the plaintiff's evidence does not raise a genuine issue as to

a material fact, then summary judgment is proper for the

defendants.  <u>See</u>, <u>Anderson</u>, 477 U.S. at 249-50 (where evidence is

not significantly probative, then summary judgment is proper).

Furthermore, even as to a material fact, an issue is genuine only

where the record establishes that the fact-finder could find, by

a preponderance of the evidence, that the plaintiff is entitled

to judgment in his favor.  <u>Id</u>., 477 U.S. at 252.

**FACTS**

The relevant facts, either undisputed or according to the

plaintiff, and taken in the light most favorable to the plaintiff

as the non-moving party for purposes of the defendants' motions,

as well as all reasonable inferences therefrom, to the extent

supported by the record are as follow.

On June 27, 2002, Weber was housed in the Special Management

Unit[2] (SMU) at BRCI.  On June 27, 2002, Weber was involved in an

incident at the SMU's restricted fenced-in recreation area, where

---

[2]  The SMU is a unit isolated from the general population
where inmates requiring more intense levels of supervision and
monitoring are housed. Weber has an extensive history of
disciplinary problems and was on lock-up status most of the time
he was an inmate at BRCI. (Aff. of Gathers, Jones, Stephan, and
Wright.)

he was required to exercise because of his security detention status.  At the conclusion of the exercise period, Defendant Gathers gave Weber several lawful verbal directives to back up to the gate of the recreation area to be handcuffed so that he could be taken back into the SMU.  Weber refused Gathers' direct orders and "stated that he would rather be restrained by officer Thomas." (Aff. of Kozie L. King, para. 5; see also, Aff. of Gathers; Aff. of Brennan, Jr.; Incident Report.)  Weber agrees that he protested Gathers' orders to back up to the cage to be handcuffed, but that he did eventually approach the gate.  (Weber dec. para. 12).  Weber "exchanged words" with Gathers before he approached the gate.  (Aff. of Kozie L. King, para. 5).

Witnesses' accounts of what happened next diverge. According to Weber, he put his left hand through the gate and Gathers struck Weber's left hand with her handcuffs which drew blood from several of his fingers.  (Weber dec. para. 12). According to the defendants' witnesses, Weber grabbed Gathers hand and pulled her into the gate and said, "I told you that I was going to get you."  (Aff. of Gathers; Aff. of Brennan, Jr.; Incident Report).

Gathers attempted to spray her chemical munitions at Weber, but Weber ran to the back of the recreation area.  (Aff. of Gathers; Aff. of Brennan, Jr.; Incident Report).  Gathers left

5

the recreation field and notified Lieutenant Stephan of the incident.  Id.

Weber was removed from the recreation field by Lieutenant Stephan and Sergeant Wright, and they escorted him toward the SMU.  As the officers were escorting Weber up the stairs into the B Wing, Weber saw Gathers coming toward him and in response Weber "attempted to enter the building through A Wing walkway."  (Aff. of Kozie L. King, para 7).  The officers then "grabbed both Plaintiff's arms and forcefully proceeded to escort the plaintiff to the B Wing walkway."  Id.  Weber claims that during this maneuver Gathers struck him in the face.  (Am. Complaint, para. 8).

The officers successfully placed Weber in a SMU holding cell.  (Aff. of Stephan; Aff. Brennan, Jr.; Incident Report.) Associate Warden Reed was notified of the incident, and a forced cell movement team was activated at 11:00 a.m.  (Aff. of Stephan; Aff. of Brennan, Jr.; Incident Report; Aff. of Ostrander; Videotape of Forced Cell Movement).  Weber was removed from the holding cell by the forced cell movement team and placed in the restraint chair in holding cell tank B 157.  (Aff. of Stephan; Aff. of Brennan, Jr.; Incident Report; Aff. of Ostrander; Videotape of Forced Cell Movement.)

Nurse Donna Walls came to the cell and evaluated Weber after he was placed in the restraint chair.  (Aff. Stephan; Aff. of

6

Brennan, Jr.; Aff. of Ostrander; Incident Report; Videotape of
Forced Cell Movement.)   Nurse Wall asked him if he was okay and
Weber told her he was okay.   (Weber's Dec. para. 46).   Nurse Wall
asked him if he was hurt anywhere, to which Weber said, "No."
(Videotape of Forced Cell Movement).   Wall examined Weber and
assessed him to be without any injury requiring treatment or
medical care.   (Aff. of Wall).

The forced cell movement team was re-activated at 2:55 p.m.
to remove Weber from the restraint chair and return him to his
cell.   No further incidents occurred.   (Aff. of Stephan; Aff. of
Brennan, Jr.; Incident Report; Aff. of Ostrander; Videotape of
Forced Cell Movement).

Nurse Wall saw Weber after he was taken out of the restraint
chair.   Her report is as follows:

> 6/27/02 15:53 "I/M seen and assessed at cell after
> being removed from chair he is demanding to have
> x-ray done to L hand States it is swollen and that
> arm is blue no swelling is noted has good ROM and
> pulse no discoloration noted there is indentation
> to left wrist where cuffs were.   I/M angry
> demanded to see documentation of this statement to
> Dr. Explained to him this was done on computer and
> could not bring computer down to lock up.   Arm is
> not blue.   Do not see need for x-ray refer to MD
> signed off on 06/27/02 @ 16:21 by Donna L. Wall,
> licensed practical nurse agree signed off on
> 06/28/02 @ 12:09 by Michael J Beinor, Physician
> IT". (Sic).

(Attachment to aff. Of Brenda Dash-Frazier Doc. 11).

Nurse Mackey saw Weber during rounds the next day, examined
him including his wrist, found no abnormalities, and determined

that he had good range of motion in his wrist.  Weber wanted an x-ray of his wrist to be taken and Nurse Mackey told him he did not need an x-ray at that time.  (Aff. of Mackey, amended complaint para 13).

Weber was subsequently seen by Nurse Mackey on July 2, 2002, with similar complaints.  X-rays of the Weber's wrist were taken on July 15, 2002, and September 30, 2002, which x-rays did not indicate the need for any medical treatment.  (Aff. Mackey, para. 11-14).  The x-rays revealed only that Weber had a single healed or healing oblique fracture involving the left radial styloid, and that there was no acute fracture, subluxation, or destructive bone lesion involving the left hand.  (Aff. of Mackey, para. 12, 13).  The x-rays of Weber's left wrist and hand did not indicate any serious or emergent medical need and Weber was advised of the findings.  (Aff. of Mackey, para. 14).

Weber also complained that, at some point during the forced cell movement, his personal papers were taken from him and an officer told Weber he would get the papers back to him.  Weber's papers were never returned to him.  (Am. Complaint para. 11).  Weber has not pursued any state remedy for the loss of his personal property.

8

Weber also complained that he had to wear "black box restraints"[3] when he went to recreation, showers, the medical department, and the like for approximately forty (40) days after the incident, as ordered by defendant Stephan. (Am. Complaint, para. 12). He alleges no injury from the restraints.

## LAW

### EXCESSIVE FORCE

The Eighth Amendment prohibits cruel and unusual punishment of persons convicted of crimes. Shakka v. Smith, 71 F.3d 162, 165 (4th Cir. 1995). Cruel and unusual punishment is established by showing unnecessary and wanton infliction of pain. Hudson v. McMillian, 503 U.S. 1, 5 (1992). The analysis of a claim of excessive use of force has two parts: a subjective component, where the courts must determine if "the officials act[ed] with a sufficiently culpable state of mind," and an objective component, where the courts must determine "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. at 8.

---

[3] A "black box" is a hard plastic box placed over the lock apparatus that runs between the prisoner's handcuffs which make it more difficult for a prisoner to tamper with his handcuffs. A chain runs through the box and encircles the prisoner's waist. The chain is tightened and then locked in back so that the prisoner's hands, restrained by handcuffs and the black box, are pulled against his stomach. Muhammad v. Page, 2006 WL 468725, quoting, Knox v. McGinnis, 998 F.2d 1405, 1407 (7th Cir. 1993).

9

The subjective component turns on whether the force was used "maliciously and sadistically for the very purpose of causing harm," or in "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Factors considered in making this determination are:  1) the need for the use force; 2) the relationship between the need and the amount of force used; 3) the extent to which, based on the facts known by the correctional officers at the time, inmates and staff faced harm if force was not employed; and 4) the steps, if any, taken by correctional officers to limit the force utilized. Hudson, at 7.

The objective component addresses whether the use of force offends contemporary standards of decency.  Id. at 8.  In making this determination, courts weigh "the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose."  Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998).  The Constitution does not prohibit de minimis uses of physical force as long as the force is not "repugnant to the conscience of mankind." Hudson, at 9-10.

De minimis injury indicates that only de minimis force was used.  Norman v. Taylor, 25 F.3d 1259, 1262 (1994).  If the injury is de minimis, a plaintiff cannot prevail "absent the most extraordinary circumstances".  Id. at 1263.  Extraordinary

10

circumstances exist where the force used is "of a sort repugnant to the conscience of mankind" or the pain itself is such that it constitutes more than *de minimis* injury.  Id. at 1264.  Put another way, "diabolic" or "inhuman" physical punishment is unconstitutional.  Id.

In making these determinations, courts should be mindful that, "[P]rison administrators... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Whitley v. Albers, 475 U.S. at 321-22.  This deference includes both security measures taken as a result of an actual confrontation with an inmate and preventive measures to reduce the number of confrontations or other prison disciplinary breaches.  Id. at 322.  Neither judges nor juries are to substitute their judgment for that of prison officials who have made a considered choice. Id.  Review should be reserved for measures taken in bad faith and for no legitimate purpose.  Id.  "Officials are entitled to use appropriate force to quell prison disturbances."  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  Further, not every malevolent touch by a correctional officer violates an inmate's constitutional rights.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

11

MEDICAL CLAIMS UNDER § 1983

A prisoner has a heavy burden of proof in a medical claim case under the civil rights statute.  With respect to medical care, a prisoner in a § 1983 case "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, or lack thereof, must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); Norris v. Detrick, 918 F.Supp. 977, 984 (N.D.W.Va. 1996), aff'd, 108 F.3d 1373 (4th Cir. 1997).

A claim that the defendant should have ordered additional treatment was the argument rejected in Estelle:  "Certainly an x-ray of [Gamble's] lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing.  But the question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice, and as such the proper forum is the state court... ."  Estelle at 107.

12

The Estelle Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Estelle v. Gamble, 429 U.S. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988); Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986).

In Lamb v. Maschner, the district court ruled that the proper inquiry is whether the prison provided any treatment, and that the plaintiff's agreement or disagreement with the treatment is irrelevant:

> Even though plaintiff and defendants have a differing opinion as to the proper treatment to be received by plaintiff, this does not in and or itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976). Therefore, the key question in this case is whether the defendants have provided plaintiff with some kind of treatment, regardless of whether it is what plaintiff desires.

Lamb v. Maschner, 633 F. Supp. 351, 353 (D. Kan. 1986).

LOSS OF PERSONAL PROPERTY

Weber complained that his constitutional right to due process was violated when his personal property was taken from him and not returned to him despite a promise to do so. "An intentional ... deprivation of property by a state employee does not violate the procedural requirements of the Due Process Clause

13

of the Fourteenth Amendment if a meaningful post-deprivation
remedy for the loss is available." Hudson v. Palmer, 468 U.S.
517, 104 S.Ct. 319 (1984).

## BLACK BOX RESTRAINTS

The use of "black box" restraints has been held to be
constitutional because prisoners have no protected liberty
interest in avoiding restraints when being moved. See, e.g.,
Knox v. McGinnis 998 F. 2d 1405 (7th Cir. 1993); Theil v.
Wisconsin, 399 F.Supp. 929 (W. D. Wis. 2005).

## ELEVENTH AMENDMENT IMMUNITY

When a defendant is sued in his or her official capacity,
the suit is frequently intended as one against the state, the
real party in interest.  If review of the pleadings indicates
that the state is, in fact, the party being sued, then a judgment
awarding damages is precluded by the Eleventh Amendment of the
Constitution.  Although declaratory and/or injunctive relief may
be granted, damages may not be awarded against the state.

In Will v. Michigan Department of State Police, 491 U.S. 58
(1989), the Supreme Court instructed that section 1983 provides a
federal forum to remedy many deprivations of civil liberties, but
it does not provide a federal forum for litigants who seek a
remedy against a state for alleged deprivations of civil
liberties.  The Eleventh Amendment bars such suits unless the
state has waived its immunity or unless Congress has exercised

14

its power under § 5 of the Fourteenth Amendment to override that
immunity.

The Eleventh Amendment immunity granted to the states
"applies only to States or governmental entities that are
considered 'arms of the State' for Eleventh Amendment purposes,"
but the court found that state agencies, divisions, departments
and officials are entitled to the Eleventh Amendment immunity.
Will at 70.  In reaching this conclusion, the Court held that a
suit against state officials acting in their official capacities
is actually against the office itself, and therefore, against the
state.  State officials may only be sued in their individual
capacities.

### QUALIFIED IMMUNITY

Public officials such as these defendants are free from
liability for monetary damages if they plead and prove that their
conduct did not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.  Harlow v. Fitzgerald, 457 U.S. 800, 815-16 (1982);
American Civil Liberties Union, Inc. v. Wicomico County, 999 F.2d
780 (4th Cir. 1993).  Summary judgment is a particularly
appropriate procedure for determining entitlement to qualified
immunity and the defendants have raised this immunity in their
motion.  Torchinsky v. Siwinski, 942 F.2d 257 (4th Cir. 1991).
The standard of review on summary judgment is whether there

15

exists genuine issues of clearly established constitutional
violation.  <u>Turner v. Dammon</u>, 848 F.2d 440 (4th Cir. 1988).

## DISCUSSION

A review of the record and relevant case law reveals the
defendants are entitled to judgment as a matter of law on all the
plaintiff's federal claims, that the court should decline
jurisdiction over the state claims, and that this action should
be designated a "strike" under the Prison litigation Reform Act
(PLRA).

As to Weber's excessive force claims, it is uncontested that
he did not obey Gathers' repeated lawful orders at the recreation
fence because he preferred to have another officer handcuff him.
Then, upon entering the SMU, Weber attempted to proceed in a
direction different from the direction officers were lawfully
directing him.  Weber himself told medical personnel that he was
not hurt anywhere and that he was "okay" when he was examined,
which is consistent with all the findings of medical personnel,
and the videotape tape of the restraint chair episode.  While x-
rays revealed that he had fractured a bone in his wrist in the
past, Weber presented no evidence that any defendants' action
complained of here caused the fracture.  Here, there was a need
to persuade Weber to obey the officers' orders and preserve the
safety of the officers, which need called for the application of

16

force, and there is no record evidence to demonstrate anything beyond a *de minimis* injury.

Therefore, it appears, viewing Weber's summary judgment materials and his complaint in a light most favorable to him, no reasonable juror could conclude that any force used was "repugnant to the conscience of mankind." It appears only that any force used was justified "in a good faith effort to maintain or restore discipline". Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1085. The defendants are entitled to summary judgment on this claim.

Likewise, there is no evidence that Weber had a serious medical need or that Nurse Mackey or any other defendant acted with deliberate indifference to Weber's health and safety as required by Estelle. In fact, Weber was provided medical attention and treatment at all times alleged in the complaint. Weber was examined and assessed during and after being placed in the restraint chair on June 27, 2002, and was found to be without any injury requiring treatment or medical care. The following day Nurse Mackey saw Weber during rounds and was able to examine his left wrist, finding no abnormalities and good range of motion with his left wrist. As a result, she told Weber that he did not need an x-ray at that time. Weber was again seen by Nurse Mackey on July 2, 2002, and x-rays of his wrist were taken on July 15, 2002, and September 30, 2002. No x-ray indicated the need for

17

any medical treatment.  Likewise, the other members of the BRCI
medical staff who saw Weber during the relevant time did not
believe that he required medical treatment, much less that he had
a serious medical need.  At most, Weber disagrees with the BRCI
medical staff, which disagreement does not rise to the level of a
cognizable civil rights claim.  The defendants are entitled to
judgment as a matter of law on Weber's medical claim.

Next, since Weber has remedies under state law, he cannot
claim that he has been denied procedural due process in the loss
of his personal property under Hudson v. Palmer, supra.

Nor does Officer Stephan's decision to use black box
restraints when transporting Weber for approximately forty (40)
days following the restraint chair incident offend the
Constitution.  As the Whitley Court indicated, courts are to
accord prison officials, "wide-ranging deference in the adoption
and execution of policies and practices that in their judgment
are needed to preserve internal order and discipline and to
maintain institutional security."  Whitley, at 321-22.

Additionally, there is no dispute that the defendants were
employees of the SCDC and, thus, state officials acting in their
official capacity while employed by the SCDC.  Therefore, they
are entitled to Eleventh Amendment immunity in their official
capacity from a monetary damage award which Weber seeks.

18

Similarly, the defendants are entitled to qualified immunity from suit in their individual capacities as it does not appear that the defendants violated a particular right of Weber's, clearly established in law, of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 815-16 (1982); American Civil Liberties Union, Inc. v. Wicomico County, 999 F.2d 780 (4th Cir. 1993). The standard of review on summary judgment is whether there exist genuine issues of clearly established constitutional violation. Turner v. Dammon, 848 F.2d 440 (4th Cir. 1988). No such issues exist in the instant action.

Finally, § 804 of the PLRA amended § 1915(g), and reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Based upon the foregoing evidentiary failures, it appears this action should be characterized as frivolous, malicious, or failing to state a claim upon which relief may be granted, and should be designated as a "strike".

If the court accepts this report and recommendation that the plaintiff's § 1983 claims should be dismissed, it is further

19

recommended that Weber's state law claims be dismissed as well for want of jurisdiction.  Specifically, this court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).

### CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motions be granted, and that all other motions be deemed moot.  It is also recommended that the court exercise its discretion to decline to take jurisdiction over the state law causes of action and that they be dismissed without prejudice on that basis.  It is also recommended that this action be deemed a "strike" against the plaintiff within the meaning of the PLRA.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

May 22, 2006

20

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
&
The **Serious Consequences** of a Failure to Do So

      The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. <i>See</i> <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

      During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must** <i>specifically identify</i> **the portions of the Report and Recommendation to which objections are made** <i>and</i> **the basis for such objections.** <i>See</i> <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. <i>See</i> <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), <i>cert. denied</i>, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). <i>See also</i> <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), <i>cert. denied</i>, 474 U.S. 1009 (1985). In <u>Howard</u>, <i>supra</i>, the Court stated that general, non-specific objections are <i>not</i> sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

<i>Accord</i> <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded <i>pro se</i> in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

<i>See also</i> <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a <i>pro se</i> litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger <i>de novo</i> review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** <i>See</i> <u>Wright v. Collins</u>, <u>supra</u>; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**